## Case No. 3,014.

### COLLINS v. HATHAWAY et al.

[Olc. 176.][1]

District Court, S. D. New York. July, 1845.

JOINT ACTION FOR SEAMEN'S WAGES—COSTS—
TAXATION—RE-TAXATION.

1. The act of congress of June 20, 1790 [1 Stat. 133], in relation to seamen's wages, does not compel all the seamen suing in personam for wages earned on the same voyage, to unite in the action.

2. The peremptory provision in the act applies only to cases in rem. But the policy of the statute embraces suits in personam, and this court encourages joint actions to be prosecuted in that case also.

3. Costs are technically awarded to parties, but substantially they belong to the proctor to the suit, and the court will uphold his right to them against acts of the principal to his prejudice.

4. Where several seamen unite in an action in personam to recover wages, all of whom, except one, obtain decrees for $50 and over, which are appealed to the circuit court, and a decree is rendered in favor of the other libellant for less than $50, he can tax full costs in his own name, and perfect and enforce, by execution, his decree for wages and costs. The causes of action and the final decree are all separate, and the remedy is as in a separate action.

[Cited in Aiken v. Smith, 6 C. C. A. 414, 57 Fed. 425.]

5. The rule relieving seamen from stipulations for costs produces no unreasonable inequality as against ship-owners.

6. An irregularity in the taxation of costs may be corrected by the court, on motion, after final decree rendered.

7. The practice is liberal in allowing a re-taxation of costs, where, by mistake, misapprehension or other casualty, a party failed opposing the original taxation, particularly where the costs claimed are large.

[In admiralty. Libel by James Collins against Francis Hathaway and others for wages.]

Burr & Benedict, for libellant.

D. Lord, Jr., for respondents.

BETTS, District Judge. This case has been reserved a considerable time since the hearing, in order to ascertain whether the points involved in it have been before considered and decided in this court, and also to await an opportunity to confer with the circuit judge upon the question of practice common to both courts, which composes the gravamen of this application. No decision is produced bearing upon the question, and the continuing absence of the circuit judge will delay a conference with him on the point of practice for several months. At the request of the proctors of the respective parties, judgment will therefore be no longer suspended.

The libel was filed by several of the crew of the bark Florida, for wages. On the final hearing, wages were decreed the several

[1] [Reported by Edward R. Olcott, Esq.]

libellants in distinct and different sums. The present libellant was awarded less than $50, and that decision not being appealable, the decree in his favor became final. His co-libellants each recovered above the sum of $50, and it appears, apud acta, that the respondents have appealed from that portion of the decree, and that the appeal is now pending in the court above. This libellant proceeded to perfect the decree in his favor. He made up a bill of costs, which embraced all the charges incurred in the joint action of himself and co-libellants, and had it formally taxed. Execution has since been issued to collect those costs, together with the amount of wages decreed to him. The respondents, by this motion, apply to the court to set the proceedings aside, because the taxation of entire costs was unauthorized and irregular, or that a re-taxation or appeal from the one made, if that was regular, may be granted them; but the motion rests more especially on the objection that a single libellant is not entitled to recover to himself individually the entire costs accruing in a suit of which he was only one of several promovents. The assumption that parties obtain, personally, the costs awarded on the decision of a suit in prosecution, is essentially erroneous. It is so only theoretically. The general decree gives the costs nominally to a party in the action, but in reality nothing passes by it into his hands, beyond the reimbursement of witnesses' fees, or advances actually made by him to other ends than the payment of his proctors' and advocates' fees. The taxed costs belong to them, and their rights thereto will be protected by the court against the exercise of any authority over them by the party himself to their prejudice. The bill of costs taxed in this case includes nothing which is payable to the libellant personally. It consists of proctors' fees, witnesses' fees and charges by officers of the court. These accrued, and were necessary alike for one as for all the suitors, and are incurred to the same amount, whether the recovery is fifty dollars alone or above that sum.

The facts upon which the action was maintained in this case were common to all the libellants, and were supported by the same testimony. The evidence in bar of the action was also the same against all the libellants. The diversity of proof, so far as there was a difference, related mainly to the defence, going to show that each libellant could not claim an equal amount of wages. But on the defence, alike as with the demand, the material inquiry was into the facts attending the wreck of the vessel, and whether those facts secured the libellants their wages, notwithstanding the loss of the ship. This party has, in the judgment of the court, maintained his right of action on the merits, and showed an unpaid amount of wages earned, for which he obtained a decree, and nothing brought forward on the part of the

respondents on this motion shows that if the suit had been in the sole name of the libellant, the items of legal charge would be at all different. Act Cong. 1790, c. 56, § 6 [1 Stat. 133], imposes the necessity on the crew to unite in an action against a vessel for the wages of a common voyage; but no individual seaman would be placed in a worse condition, in complying with that law of prosecution, than if he sued separately. He in no respects stands responsible for the right of his associates to recover, nor is the decree joint in case all recover, and each exactly the like sum. Notwithstanding such blending of parties, the judgment of the court is for or against each as an independent suitor. That regulation of actions does not in terms include suits brought by seamen for wages against the master or owner of a vessel. They may, undoubtedly, then exercise their common law right, and each sue for himself. They are, however, within the fair policy of the act, and this court, to secure simplicity and expedition in this class of actions, and avoid expense, encourages the junction of the crew, alike in suits in personam and in rem. Had the libellant brought his separate action in this instance, he would, as the common incident to the recovery of wages, also be entitled to full taxable costs. The act of congress would operate oppressively upon a seaman, if under it he is compelled to stand the risk of the right of action of those with whom he is associated, and thus be deprived of costs, or exposed to be charged with costs, on their being defeated. And the course of the court sanctioning this junction of causes of action, might, in such cases, become more injurious to them than if they sued as individual parties. By protecting, in this manner, the seamen who are successful in their portion of the suits, those proceeded against may also have their rights substantially preserved; because those libellants defeated on the hearing, or whose decrees may thereafter be reversed on appeal, may, at the discretion of the court, be compelled to satisfy the costs created against the adversary parties. Such compensatory costs is the only indemnity provided by law for litigant parties against each other, when one establishes no right of action or sufficient defence. This is in consonance with the rule at law, where no apportionment of costs is made in case of several prosecutors, some of whom obtain judgments, and others have judgments rendered against them. The successful party on each side recovers full costs against his adversary. 2 Rev. St. 616, § 18; 3 Wend. 326.

It is urged that the rule of court permitting seamen to sue for wages without filing stipulations for costs (rule 45) supplies no reciprocity to ship-owners, as they are compelled to contest unfounded claims put in prosecution by transient and irresponsible persons, without any indemnity by costs where such actions are defeated, and that

because of such disfavor to ship-owners and masters in defence of those actions, the court, in allotting costs, should confine the allowance to the strictest share of each sailor, in the general bill of costs. I think there would be no difficulty in vindicating the provisions of the rule on general principles, and in showing that the preponderance of privileges in the matter of wages between the two classes, lies heavily against seamen and in favor of masters and owners. In case of the capture or total loss of the ship on the voyage, the mariner loses all wages (Abb. Shipp. 457), though the owner may cover wages in his policy on freight as part of the cost of earning it (3 Kent, Comm. 269, 271; 1 Phil. Ins. 316), and thus receive and pocket the entire amount. And the circuit court, in this district, has decided that in cases of abandonment by the owners for a technical total loss, although the ship and her cargo was navigated to port after her injury, yet the crew had lost their wages. The postponement of the payment of wages to ten days after the unlading of the vessel, and compelling a seaman, after the voyage is fully ended, to summon the master or owners, and prove a balance due him, before he is allowed to institute an action for its recovery, are all privileges protective to the merchant solely, and in derogation of the common law rights of sailors. The exemption in this court of seamen from giving security for costs is but a slight boon in comparison with the material privileges accorded owners of ships as against them, without including, in the enumeration, the abrupt confiscation of their earnings on the longest voyages, for a needless absence of 48 hours from their ship. The slender relief afforded by the rule is not peculiar to this court. It is sanctioned by the highest English authority (1 Hagg. Adm. 220), and is believed to be in consonance with the usage of admiralty courts in the United States (Dunl. Adm. Pr. 102, 303). I think, therefore, the libellant in this case is entitled to full costs of suit, without regard to the possible disposition of the case in respect to his co-libellants. The respondents may be reimbursed the payment in case the decree against them is reversed by the appellate court, by costs awarded them therein, if that court considers them equitably entitled to costs; and that court can also give adequate relief to the seamen who are separated from the joint action, by awarding them an indemnity in costs in that court.

The court cannot speculate upon a probable reversal in the circuit court of the principles of law or their application, which governed the decision of this court in favor of the libellant. That decision must stand as the law of the case until disaffirmed by the appellate court. If such reversal occurs, it does not follow but that the libellants may even there be awarded costs, for if an equitable and probable cause of action existed in

their favor, the court above may secure them their costs, although they fail in recovering wages. Dunl. Adm. Pr. 152. Moreover, an inferior court ought not to stay its hand in administering what it regards the law of a case, under apprehension that a superior tribunal may hold a different opinion upon it. There is nothing extraordinary in a cause experiencing alternations of affirmances and disaffirmances during its progress before tribunals of different grades. Nor is it at all without precedent, that solemn adjudications of courts of last resort are recalled, modified or annulled by their own subsequent action.

The proctor of the respondents alleges that the taxation of costs in his absence on the part of the libellant was irregular; or if the proctors of the libellant were justified in their practice, he lost his opportunity of renewing his objections to the charges, from misapprehending the times of hearing before the taxing officer, and also in being misunderstood by the taxing officer as to the reservation of his right of appeal. The proctors of the libellant put in a contradictory statement of facts touching the mistakes or misapprehensions set up on the other side, and insist their practice was regular; but irrespective of the question of strict regularity, the usage of the court is, whenever colorable grounds are shown for revision of taxation, to give to the parties interested an opportunity for review by re-taxation, although they may not, on their part, have scrupulously pursued the accustomed course of practice. The bill taxed in this case is large in amount, being $434.88, exclusive of clerk's charges, and the respondents ought not to be concluded from relief in the matter, even if laches may be imputed to their proctor, since the libellant is in no way prejudiced by the lapse of time.

The court is not disposed to infer any unnecessary delay or neglect in applying for a re-taxation, but considers the proctor acted in good faith, under the persuasion that he might have the bill of costs legally adjusted whenever the libellant should seek to collect it. It is accordingly directed, that the respondents may, at their election, take out an order for the re-taxation of the costs before the proper taxing officer, or accept the proposal of the libellant's proctors if renewed, to have the items objected to on the taxation and noted at the time by the taxing officer as appealed from, deducted from the bill. In case of such arrangement, the bill to be deemed taxed at the amount left after such deductions. But in case a re-taxation is had, each party will possess the usual right of appeal therefrom. The respondents, if they proceed to a new taxation, must give notice to the libellant's proctors of the time and place, and pay the costs thereof.